FILED
U.S. DISTRICT COURT
                DIV.
2012 AUG -6 PM 1:58

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

SHERRI P. TANNER,           )
                            )
        Plaintiff,           )
                            )
    v.                       )           CIVIL ACTION NO.: CV511-108
                            )
                            )
MICHAEL J. ASTRUE,           )
Commissioner of Social Security, )
                            )
        Defendant.           )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Morton J. Gold, Jr., ("the ALJ") denying her claim for Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Plaintiff urges the Court to reverse and remand the ALJ's decision for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff protectively filed an application for Period of Disability, Disability Insurance Benefits, and Supplemental Security Income on April 19, 2007, alleging that she became disabled on May 20, 2005, due to a back injury and a later onset of depression. (Tr. at 20). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On August 6, 2009, the ALJ conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and

testified. Jackson C. McKay, an impartial vocational expert, was also at the hearing. The ALJ found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 14). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 1-6).

Plaintiff, born on February 21, 1962, was forty-eight (48) years old when the ALJ issued his final decision. She earned a general education degree in 1980, a licensed practical nursing degree in 1994, and a registered nurse degree in 1997. (Tr. at 38-39). Plaintiff's past relevant work experience includes employment as a licensed practical nurse and as a registered nurse. (Tr. at 39-40).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20

2

C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff has not engaged in substantial gainful employment since the alleged onset date of disability. (Tr. at 19). At Step Two, the ALJ determined that Plaintiff had lumbrosacral spinal surgery residuals L3-5 fusion, prescription drug abuse, situational depression, and right shoulder impingement, each a condition considered "severe" under the Act. (Id.). However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal a listed impairment. (Tr. at 21). The ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level, with the following restrictions: no climbing of ropes, ladders, or scaffolding; individually sit, stand, walk, push, and/or pull for at least six hours of an eight-hour workday; occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; individually reach overhead with her right upper extremity, climb ramps/stairs, stoop, and crawl for no more than one-third of an eight-hour day; and avoidance of changes to

3

her work setting which would disrupt her ordinary routines. (Tr. at 22). The ALJ also found that Plaintiff's prescription drug abuse and depression might disrupt Plaintiff's pace once or twice a week, but she would be able to perform assigned tasks by the end of the workday. The ALJ further found that Plaintiff may be late getting to work or returning from a break by up to 15 minutes once or twice a week, but again, she would be able to complete her assigned tasks in the same workday. (Id.). At the fourth step, the ALJ noted Plaintiff was not able to perform her past relevant work as a registered nurse or licensed practical nurse, as those occupations are generally performed throughout the national economy. (Tr. at 26). At the fifth and final step, the ALJ determined that, while Plaintiff could not perform her past relevant work, there were jobs that exist in significant numbers in the national economy that she can perform. (Tr. at 27).

## ISSUES PRESENTED

Plaintiff asserts that the ALJ erred by: 1) discrediting the opinions of Plaintiff's treating psychiatrist, Dr. Morgan, and Plaintiff's treating physician, Dr. Gold; 2) substituting his own opinion for that of medical experts to make unsubstantiated conclusions regarding Plaintiff's medical conditions; and 3) relying on a hypothetical question that did not include all of Plaintiff's limitations.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d

1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Whether the ALJ properly discredited the opinions of Dr. Morgan and Dr. Gold**

Plaintiff alleges that the ALJ improperly discounted the opinions of her treating psychiatrist and her treating physician. Plaintiff asserts that Dr. Morgan's opinion is consistent with the record, and that the ALJ assigned improper weight to the observations of Plaintiff's other, non-treating physicians. (Pl.'s Br., p. 14). Plaintiff also asserts that the ALJ's dismissal of Dr. Gold's opinion is unfounded and lacks in explanation. (Id.). Defendant responds that Dr. Morgan's opinion regarding Plaintiff's depression and Dr. Gold's opinion regarding Plaintiff's back injury are not opinions due

5

any weight in deciding Plaintiff's disability because both opinions are inconsistent with evidence as a whole. (Def.'s Br., p. 8).

It is well-established that the opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. Id. at 1241. When the ALJ rejects the opinion of the treating physician, he must specify that he is doing so and must articulate a reason for not giving the opinion weight. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The ALJ specifically noted that he discounted Dr. Gold's Disability Statements for three (3) reasons. First, the ALJ stated that, "multiple examinations from 2007 to June 2009 show nothing wrong with [Plaintiff] neurologically, anatomically or orthopedically. Her back problems appear stable at this time, and there is no evidence of spinal cord compression or nerve root impingement." (Tr. at 26). The ALJ observed that the medical evidence failed to substantiate Plaintiff's subjective allegations of disability, particularly her allegations regarding her lower back pain. The ALJ also noted that Plaintiff underwent lumbar surgery, which she tolerated well without complications. The ALJ noted that, while Plaintiff continued to complain of persistent right-sided lower back pain, a magnetic resonance image ("MRI") of the lumbar spine in September 2007 showed post-operative changes without acute abnormalities. The ALJ observed that

AO 72A
(Rev. 8/82)

Plaintiff's electromyography ("EMG") and nerve conduction studies showed moderately severe lumbar radiculopathies on the right. However, the ALJ noted, Dr. William Morton examined Plaintiff in June 2008, and her physical examination was essentially within normal limits. The ALJ observed that no neurological deficits were noted, the range of motion of Plaintiff's lumbar spine, and her right and lower extremities and her muscle strength were within normal limits. Plaintiff's sensation in all extremities was intact. Plaintiff's diagnosis was a backache. (Tr. at 24, 797-98). The ALJ stated that Plaintiff reported in April 2009 that she had significant improvement from a trial spinal stimulator, her neurological examination was stable, there was functional range of motion and strength in her extremities, and Plaintiff was in no acute distress. Two months later, Plaintiff related exacerbation of her pain symptoms, but her physical examination remained the same as in April 2009, and she was diagnosed with only a backache. (Tr. at 24, 927, 959-60). The ALJ noted that Plaintiff's June 2009 examination did not support her subjective complaints of left shoulder pain.

The ALJ also discounted Dr. Gold's Statements because the ALJ determined Plaintiff's pain "is centered around her desire to obtain Schedule II narcotic drugs." (Tr. at 26). In support of this determination, the ALJ noted Plaintiff had a history of symptom magnification and drug seeking behavior, despite her allegations. The ALJ observed that Plaintiff stopped going to her pain management doctor, who controlled her intake and use of narcotic drugs, and Plaintiff did not get a spinal cord stimulator until she was "practically forced to do so." (Tr. at 25). The ALJ also noted that Plaintiff was able to obtain narcotic drugs from at least two other more permissive doctors, despite their reservations about prescribing so many medications. The ALJ stated that Plaintiff was

advised not to get pain medications from other sources without her doctors' knowledge. Moreover, the ALJ noted that Plaintiff claimed to have side effects because of her medications, yet, if this were true, she would not have continued to request additional medications.

Finally, the ALJ averred that he discounted Dr. Gold's Statement because he opined Plaintiff was unable to work, which is an issue reserved for the Commissioner. The ALJ noted that this determination also was not supported by the record. The ALJ was within his right to discount Dr. Gold's Statement on this basis. The "ultimate conclusion" that a plaintiff "is disabled is an opinion on an issue reserved for the Commissioner and, as such, is not entitled to controlling weight. Walker v. Barnhart, 158 F. App'x 534, 535 (5th Cir. 2005). "A statement by a medical source" that a plaintiff is "'disabled' or 'unable to work' does not mean" the Commissioner "will determine that [a plaintiff is] disabled." 20 C.F.R. § 404.1527(e)(1).

The ALJ also discounted Dr. Morgan's mental assessment, as this assessment contrasted sharply with the office notes of all other physicians and because Plaintiff has family and friends with whom she socializes regularly. The ALJ specifically noted that Plaintiff was able to meet people and she married twice in the years she claimed disability. The ALJ also noted that Plaintiff lives, drives, shops, and prepares food independently. (Tr. at 25, 68, 70, 74, 336).

The ALJ discounted Dr. Gold's and Dr. Morgan's opinions because he determined these two (2) doctors' opinions were not supported by the record and the record supported a finding inconsistent with these treating sources' opinions. The ALJ

8

established "good cause" to discount these opinions, and his determination is supported by substantial evidence.

## II. Whether the ALJ substituted his own opinion for that of medical experts

Plaintiff alleges that the ALJ substituted his own opinion in place of medical experts' opinions to find that Plaintiff was a drug seeker, and therefore, not a credible source. (Pl.'s Br., p. 16). Defendant asserts that there is medical evidence to support the ALJ's opinion of Plaintiff's drug seeking behavior and to support his conclusion that Plaintiff was not a credible source. (Def.'s Br., p. 9).

Where medical evidence supports a plaintiff's subjective complaints of pain, an ALJ cannot disregard that medical evidence and substitute his own opinion for that of medical experts. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). If a plaintiff "testifies as to [her] subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir.1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." Id. (internal citation omitted). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210-11 (quoting Foote, 67 F.3d at 1561).

Here, the ALJ did not substitute his opinion for that of medical experts, and the conclusion that he drew was supported by substantial evidence. The ALJ properly

9

rejected Plaintiff as a credible source and articulated his reasons for finding that Plaintiff was a drug seeker. The ALJ reported that Dr. Kennedy, one of Plaintiff's treating pain doctors, found that Plaintiff tested positive for non-prescribed barbiturates. (Tr. at 20, 841). On Plaintiff's next visit to Dr. Kennedy, he noted that Plaintiff was abusing her prescribed medication. (Tr. at 20, 836-37). Finally, in January of 2009, Dr. Kennedy recommended a "drug holiday" and informed Plaintiff that, following the current appointment, he would no longer prescribe Plaintiff Percocet. (Tr. at 20, 833). When Dr. Kennedy stopped prescribing Percocet to Plaintiff, Plaintiff asked Dr. Kaufman, another treating physician, to begin prescribing them to her. (Tr. at 20, 853). In June 2009, Plaintiff requested more pain medication before her prescription was due for refill. (Tr. at 951, 960). The ALJ noted each of these instances in support of his conclusion that Plaintiff was a drug seeker.

The ALJ did not substitute his opinion for that of any medical expert. Rather, the ALJ's findings that Plaintiff exhibited drug seeking behavior and was not credible are supported by objective evidence in the record. In addition, the ALJ gave specific and adequate reasons for finding Plaintiff to be not credible.

III. **Whether the ALJ provided an incomplete hypothetical question to the vocational expert**

Plaintiff alleges that the ALJ provided a hypothetical question to the vocational expert which did not accurately include Plaintiff's work limitations. Plaintiff next asserts that this incomplete hypothetical question led the vocational expert to draw incorrect conclusions regarding the availability of jobs that Plaintiff can perform. (Pl.'s Br., pp. 17-18). Defendant asserts that the ALJ's hypothetical question adequately included

Plaintiff's work limitations, as the ALJ determined those limitations to be. (Def.'s Br., p. 10).

"'[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)). Through the use of vocational expert testimony, the ALJ must articulate specific jobs which the plaintiff is able to perform. Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981). The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, No. 97-C-1548-N, 1999 WL 1335578, at *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

The ALJ asked the vocational expert whether jobs exist in the national economy which Plaintiff could perform, considering her age, education, work experience, and residual functional capacity, as outlined above and during the hearing. (Tr. at 79-80). The vocational expert testified that, under these factors, Plaintiff could perform the following jobs: hospital information clerk; outpatient admitting clerk; and medical receptionist, all of which are semi-skilled, sedentary jobs. (Tr. at 27). This hypothetical to the vocational expert included all of the impairments and limitations the ALJ found credible based on the evidence of record. Nothing more was required of the ALJ.

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 6th day of August, 2012.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)